## McKEEVER v. DADY.

### (*City Court of Brooklyn, General Term.* March 28, 1892.)

1. APPEAL—REVIEW—WEIGHT OF EVIDENCE.
    Where, in an action on a contract for the sale of stock, the testimony gives two versions of the contract, and conflicts as to the amount paid, and as to a tender of such stock, and as to the meaning of an arrangement between the parties, whereby defendant was to make a final payment when he had matters "fixed up," the facts are properly for the determination of the jury; and, if the court correctly instructs them, their findings thereon should not be disturbed on appeal.

2. SAME—HARMLESS ERROR—VARIANCE.
    A variance between the proof and allegations of the complaint, whereby defendant sustained no injury, and as to which no objection was made, is not a ground for reversal.

3. SALE—ACTION FOR PRICE.
    Upon judgment against a defendant for the purchase price of stock in plaintiff's possession he is entitled to have such stock deposited with the court for his protection.

Appeal from trial term.

Action by Edward J. McKeever against Michael J. Dady upon a contract for the purchase of stock. Judgment for plaintiff, and order denying motion for a new trial. Defendant appeals. Reversed, unless plaintiff complies with certain conditions imposed.

Argued before CLEMENT, C. J., and OSBORNE, J.

*Kellogg, Rose & Smith*, for appellant.     *J. A. Wernberg*, for respondent.

CLEMENT, C. J. The plaintiff sets forth in the complaint in this action that on or about October 25, 1889, he sold to the defendant 375 shares of stock of the Hudson River Broken Stone & Supply Company for the sum of $24,-848.55, which sum the defendant promised to pay for the same; that on January 7, 1890, the plaintiff delivered 125 shares of said stock, and thereafter, and before the action was brought, tendered to the defendant the remaining 250 shares. The plaintiff further alleges that no part of the claim has been paid except the sum of $6,875. The defendant sets forth in his answer that on or about the date stated in the complaint he entered into an agreement with the plaintiff to purchase from him 375 shares in said company at the agreed price of $10,000 in cash, and, when received by the defendant, $7,500 in stock at par of a new company to be formed; that, in pursuance of said agreement, the defendant had paid plaintiff the $10,000 in cash, but that the plaintiff had only delivered 125 shares in the old company, and that, by the non-delivery of the remaining 250 shares, he, the defendant, had been unable to obtain the stock in the new organization. The pleadings presented a square issue of fact. On the trial, however, the proofs offered by the plaintiff tended to show a contract technically different from that set forth in his complaint. Mr. McKeever testified that in September, 1889, he owned or controlled 375 shares in the old company, and that the defendant agreed to purchase the same, and to pay him therefor the amount he (McKeever) had invested in the company,—$18,000 and over,—and the amount due the plain-

tiff for salary and for interest, making in all about $24,000; that defendant agreed to pay the plaintiff $10,000 in cash, and the balance "as soon as he got all fixed up;" and that, until the entire balance was paid, the plaintiff was to retain as security 125 shares of the stock. The plaintiff further testifies that on October 25, 1889, the defendant paid him $5,000 in cash, and received from plaintiff a certificate for the 250 shares; that the defendant promised to pay the balance due on the $10,000 in a few days; that in January, 1890, (over two months afterwards,) the defendant said to him (plaintiff) that it was necessary to turn in all the stock, and that, if plaintiff would give him the other certificate for 125 shares, he (defendant) would, on the issue of the new stock, return to plaintiff a certificate for 375 shares, which plaintiff could hold as security until he was paid the excess over the $10,000, which was to be a cash payment. Plaintiff further testified that he gave the defendant the certificate for the 125 shares; that he waited for about six weeks, and could not get the new certificate, whereupon Dady told him that he could not get the new stock. Plaintiff then stated that he had forged the name of his brother on the certificate for 250 shares. He explains that such statement was not true, but that he so stated in order to get back the certificate. There were several meetings between plaintiff ·and defendant up to August, when Dady promised to settle the whole matter, and returned to plaintiff the certificate for 250 shares in order to have a new transfer prepared. The plaintiff was unable to obtain a settlement by defendant, and, in December, 1890, tendered him the certificate for 250 shares, and, on the refusal of defendant to make payment, brought this action. The plaintiff testified that he had only received, on account of the payment of $10,000, the sum of $8,375. The jury awarded the plaintiff $9,673.14, and from the judgment entered upon such verdict this appeal is taken. We have stated at length the general theory of the case as testified to by the plaintiff, because the issues involved were purely of fact, and in order to review the exceptions taken. The counsel for the defendant, in his first point, contends that the court should have instructed the jury that the plaintiff could in no event recover over the balance claimed to be due on the $10,000 cash payment,—$1,625. He contends that the contract as testified to by the plaintiff and as adopted by the learned judge in the charge to the jury was that the balance was only to be paid when the defendant had "fixed up" his matters with Paine and Husted, and when the defendant had received moneys due to him on a contract at Mt. Vernon; that the burden was on the plaintiff to show that the contingency had happened, while it appeared affirmatively that the defendant had not "fixed up" such matters. We are unable to agree with the defendant that the case should have been dismissed as to the claim for the balance over $10,000. If it be conceded that the original contract is to be interpreted as claimed by the defendant, there was other testimony by the plaintiff tending to show that the contract was modified, and that the defendant did not keep his contract. The plaintiff testified that he was to retain the certificate of 125 shares as security for the balance; that he delivered up such certificate on the promise that he should receive a certificate in the new company for 375 shares, which he was to retain as collateral, that he waited six months or more before the certificate for 250 shares was returned for correction; and after that, down to the commencement of the action, he could obtain no settlement with the defendant. We think that on the testimony the counsel for the plaintiff could fairly argue to the jury that the defendant never intended to pay the balance of the $10,000, or to give back to the plaintiff a new certificate for 375 shares as collateral. The plaintiff only conditionally agreed to wait for the payment over $10,000 until matters were "fixed up" by the defendant. He was to retain 125 shares in the old company as security, which agreement was changed in March, 1890, when the defendant agreed to give 375 shares in the new company. The court, in the charge, correctly stated the original

contract as testified to by the plaintiff, and the counsel for the defendant did not ask to have submitted to the jury any question in relation to the modifications of the agreement, and did not ask to have the jury pass upon the subsequent facts. We are also of the opinion that the meaning of the expression "fixed up," as used in this case, was a question for the jury. The plaintiff gave two or three statements as to what was said by the parties. Counsel for the defendant was content to have only two questions submitted to the jury: (1) Was the contract price as testified to by the plaintiff or as testified to by the defendant? and (2) what amount had been paid on the contract? We have now considered simply the question whether or not the defendant was entitled, on all the evidence, to a direction by the court that the plaintiff could not recover for the excess over the cash payment of $10,000 on the ground that the money was not due.

It is further claimed by the defendant that the variance between the allegations in the complaint and the proof constituted a failure of proof. That there was a variance in some respects is clear, but we do not think the defendant was injured thereby. Neither did he so consider on the trial, for no objection on that ground during the taking of the testimony was made. The questions as to the tender and of the right to recover thereon were entirely of fact. On the whole case, we are clear that it was properly submitted to the jury, and that their verdict is conclusive. It is evident that the plaintiff and the defendant are shrewd business men, who neglected to put their contract in writing. When business men engage in large transactions, and rely upon the honor of the parties with whom they deal, they should not complain, after their verbal contracts are passed upon by a jury, who see the parties and hear their testimony. We think that plaintiff should bring into court and deposit with the clerk the certificate for 250 shares now in his possession. No such point was made on the trial, but we require it for the protection of the defendant. Judgment and order denying new trial reversed, unless within 20 days the plaintiff deposits with the clerk of this court the certificate for 250 shares referred to in above opinion, in which case the judgment and order denying new trial will be affirmed, with costs.